UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Paul M. Cruz | | N/A | |
| Deputy Clerk | | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| N/A | | N/A | |

**Proceedings:**    IN CHAMBERS ORDER re Motion for Summary Judgment [25]

## I.  INTRODUCTION

This trade dress infringement action concerns the appearance of bins used to hold pistachios in grocery stores. On February 21, 2012, Plaintiff Paramount Farms International LLC ("Plaintiff") filed a complaint against Defendant Kennan Farms, Inc. ("Defendant"), alleging: (1) trade dress infringement and false designation of origin in violation of the Lanham Act Section 43(a), 15 U.S.C. § 1125(a); (2) unlawful business practices and unfair fair competition in violation of California Business & Professions Code §§ 17200, 17500, et seq.; (3) common law unfair competition. (Dkt. 1). On September 19, 2012, Plaintiff filed its First Amended Complaint, adding a claim for federal trademark dilution pursuant to 15 U.S.C. § 1125(c). (Dkt. 23).

On October 29, 2012, Defendant filed the instant Motion for Summary Judgment, arguing that Plaintiff's claimed trade dress is functional, lacks secondary meaning, and is not susceptible to confusion with Defendant's competing pistachio bins. (Dkt. 25). For the reasons below, Defendant's Motion is GRANTED in part and DENIED in part.[1]

## II.  FACTUAL BACKGROUND[2]

---

[1] At the hearing for summary judgment, held on November 26, 2012, the Court granted the motion for Defendant *in toto*. However, upon further reflection, the Court hereby denies the motion with respect to the claim for trade dress infringement, and the derivative state-law claims.

[2] Additional material facts are developed in the sections below as needed.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

    Both Plaintiff and Defendant sell pistachios.  Both parties use in-store product display bins to showcase their pistachios in grocery stores.  In 2007, Plaintiff began using bins that possess what Plaintiff claims is a distinctive trade dress, comprised of the following features: (1) the prominent use of a unique bright green color; (2) the thin**,** sans serif font for the word "pistachios" which is displayed in all capital letters; (3) the vertical orientation of the word "pistachios," which is written from bottom to top; (4) use of the color black, as trim or otherwise, drawing contrast to the unique bright green color; and (5) images of pistachios (hereinafter, the "Claimed Trade Dress").  (Pl. Opp. at 3).  The Claimed Trade Dress is not registered, however, with the U.S. Patent and Trademark Office.

    In 2011, Defendant began using a new bin to carry its pistachios.  Plaintiff claims these bins infringe its unregistered trade dress.  The respective bins are shown below.  (Def. Mot. at 1); (Pl. Opp. at 5).

**Plaintiff's Bin (2007)**



**Defendant's Bin (2011)**



## III.   LEGAL STANDARD

    Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact,

          :     
Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). The moving party may satisfy its Rule 56(c) burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts – by affidavits or as otherwise provided in the rule – that show a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party" over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248.

**IV. DISCUSSION**

**A. Trade Dress Infringement**

"Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." Clicks Billiards v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001) (internal quotation marks omitted). To prevail on its claim, Plaintiff must establish that the Claimed Trade Dress is: (1) non-functional; (2) either inherently distinctive or has acquired secondary meaning; and (3) likely to be confused with Defendant's products by consumers. Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 823 (9th Cir. 1993). Before turning to these factors, however, the Court addresses Defendant's threshold argument that Plaintiff's Trade Dress is not entitled to protection because it lacks a "consistent overall look."

**1. "Consistent Overall Look"**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

  Defendant cites out-of-circuit authority for the proposition that where the plaintiff seeks trade dress protection over a series or line of products or packaging, it must, as a threshold matter, satisfy the "consistent overall look" standard.  Rose Art Indus., Inc. v. Swanson, 235 F.3d 165, 172 (3d Cir. 2000).  This standard requires a showing that "the appearance of [plaintiffs] *several* products is sufficiently distinct and unique to merit protection as a recognizable trade dress."  Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 380 (2d Cir. 1997) (emphasis added).  According to Defendant, Plaintiff has run afoul of this principle by seeking trade dress protection over various styles of pistachio bins, packages, and advertisements, not all of which exhibit the five factors of the Claimed Trade Dress.  (Def. Mot. at 6-7).

  The Ninth Circuit has not addressed whether it endorses the "consistent overall look" test.  But even assuming the Ninth Circuit would adopt the "consistent overall look" standard, it does not foreclose Plaintiff's claim of trade dress infringement.

  The Third Circuit has explained that "when applying the 'consistent overall look' standard, that is, when determining whether the trade dress alleged by the plaintiff is recognizable, protectable trade dress, a trial court should consider only the products or packaging for which the plaintiff is seeking trade dress protection."  Rose Art Indus., 235 F.3d at 175.  Here, it is undisputed that Plaintiff does not seek trade dress protection over a "series" or "line" of products, but only one product.  See id. at 173 (distinguishing between a "a single product" and "a whole line of products").  Plaintiff is not claiming, for instance, that the Claimed Trade Dress also extends to its pomegranate juice or mandarin oranges.  In addition, in its opposition papers, Plaintiff expressly represents to the Court that it "is *not* looking for trade dress protection on bins that do not contain the PFI Trade Dress (some of which [Defendant] points to in its Motion)."  (Pl. Opp at 13) (emphasis added).  Thus, to the extent that Defendant takes issue with bins or other materials that do not share the five factors of the Claimed Trade Dress, the Court need not consider such items in determining whether Plaintiff holds a valid trade dress.

  Nor is it fatal to Plaintiff's claim that its pistachios occasionally have been displayed in Plaintiff's bins that did not possess the Claimed Trade Dress.  In Rose Art, the court confronted a similar situation where the plaintiff "used multiple package designs for the same product."  235 F.3d at 174.  The court held that "the fact that [plaintiff] packages the same product in several different types of packaging does not prevent [plaintiff] from seeking trade dress protection for *one of these packaging designs*."  Id. (emphasis added).  Put differently, "even if [plaintiff] distributed the same products . . . in fifteen different package designs for each of fifteen different customers, this fact alone would not prevent [plaintiff] from obtaining trade dress protection for one of the fifteen different packaging styles.  One or more of the package designs could be recognizable trade dress as long as it had a 'consistent overall look.'"  Id. at 175.  Thus, the fact that some of Plaintiff's bins did not embody the Claimed Trade

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

Dress does not foreclose trade dress protection for the bins that did.

In sum, the "consistent overall look" standard has no application here because Plaintiff is only seeking trade protection over the bins that bear the five indicia of the Claimed Trade Dress. Plaintiff is not seeking trade dress protection over other bins, much less other products. Accordingly, this argument does not entitle Defendant to summary judgment.[3]

### 2.  Functionality

#### i.  Legal Standard

The test for functionality proceeds in two steps. First, courts ask whether the alleged "significant non-trademark function" is "essential to the use or purpose of the article [or] affects [its] cost or quality." Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1072 (9th Cir. 2006) (quoting TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 32-33 (2001)). This "utilitarian" inquiry relies on four factors: (1) whether the feature delivers any utilitarian advantage; (2) whether alternative designs are possible; (3) whether advertising touts utilitarian benefits of the feature; and (4) whether the feature results in economies in manufacture or use. Disc Golf Ass'n, Inc. v. Champion Discs, Inc., 158 F. 3d 1002, 1006-09 (9th Cir. 2008). If the challenged feature serves a "function" as described above, the inquiry is over and the feature is not protected. Au-Tomotive, 457 F.3d at 1072.

If, however, the disputed feature could have aesthetic functionality, the court must proceed to the second step, which probes whether the feature in question "perform[s] some function such that the 'exclusive use of [the feature] would put competitors at a significant non-reputation-related disadvantage.'" Id. at 1073 (quoting TrafFix, 532 U.S. at 32). A feature is "non-reputation-related" when its objective is "unrelated to recognition or reputation" – i.e., identifying the product's source. Id. at 1070 (quoting Qualitex Co. v. Jacobson Prods. Co., Inc., 514 U.S. 159, 169 (1995)). For example, in

---

[3] Defendant also argues that Plaintiff must be judicially estopped from claiming the vertical printing of "pistachios" as an element of its trade dress because of Plaintiff's position in a separate infringement action against Walgreens. There, Plaintiff seeks trade dress protection for its pistachio packaging, but does not mention the vertical "pistachio" as an element of its trade dress. (Hamilton Decl. ¶ 6, Ex. J ¶¶ 16, 39). This argument lacks merit because Plaintiff has not alleged in this action that the Claimed Trade Dress covers both its packaging and its bins. And even if it had done so, there is nothing inconsistent in claiming that Defendant's bins violate the trade dress in certain respects, while Walgreen's packaging violates the trade dress in others.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844 (1982), the Supreme Court held that competitors are free to copy the color of medical pills because a specific color serves to identify the kind of medication (e.g., a type of blood medicine) in addition to the pill's producer. Id. at 853 (noting that "[s]ome patients commingle medications in a container and rely on color to differentiate one from another").

In the Ninth Circuit, the owner of a trademark or trade dress generally bears the burden of demonstrating that the mark is nonfunctional. Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1506 (9th Cir. 1987); Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510, 1531 (9th Cir. 1992).

### ii. Analysis

In this case, Defendant does not argue that Plaintiff's trade dress is functional in any utilitarian sense. Rather, Defendant contends the Claimed Trade Dress is functional because permitting its exclusive use by Plaintiff would place competitors at a non-reputational disadvantage. For example, Defendant argues that permitting Plaintiff the exclusive use of "bright green" against a "dark background" would significantly burden competitors ability to package their pistachios. (Mot. at 11). Similarly Defendant argues that permitting Plaintiff the exclusive use of images of pistachios would severely disadvantage competitors. (Mot. at 12).

Defendant's argument, however, relies on a flawed understanding of the doctrine of functionality. "In determining functionality, a product's trade dress must be analyzed as a whole. [The] inquiry is not directed at whether the individual elements are functional but whether the whole collection of elements taken together are functional." Int'l Jensen, 4 F.3d at 823. "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress." Clicks Billiards, 251 F.3d at 1259.

Thus, the proper inquiry in this case is whether giving Plaintiff exclusive domain over the ***constellation*** of several features – including the bright green color, the sans serif and thin font, the word "pistachios" printed vertically from the bottom up, and the images of pistachios – would impair significantly the ability of competitors to furnish bins for displaying their pistachios. Defendant has not offered any argument or evidence on this point. Accordingly, Defendant has failed to carry its initial Rule 56 burden to support summary judgment on the basis of functionality.

### 3. Distinctiveness

#### i. Legal Standard

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

"Assuming a trademark or trade dress is not functional, the plaintiff must still show that the mark or dress is either distinctive or has a secondary meaning. These are alternate standards: If a mark or dress is inherently distinctive it need not be shown to also have a secondary meaning." Int'l Jensen, 4 F.3d at 824. The Court addresses each standard in turn.

### ii.     Inherent Distinctiveness

A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source of a product." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). To determine the inherent distinctiveness of a trade dress, the court asks whether (1) the design or shape is a common, basic shape or design; (2) it was unique or unusual in a particular field; and (3) it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation. Seabrook Foods, Inc. v. Bar–Well Foods Ltd., 568 F.2d 1342, 1344 (C.P.P.A. 1977).[4] "In other words, courts look at whether the alleged trade dress is so uniquely designed that a buyer will rely on it to differentiate the source of the product." Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc., 849 F. Supp. 2d 963, 984 (S.D. Cal. 2012). The distinctiveness of a mark or dress is a question of fact. Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010).

Defendant argues that the Claimed Trade Dress is not inherently distinctive because its elements – colors, fonts, verticality of "pistachios," and images of pistachios – were commonplace in the industry before 2007. Plaintiff responds that the "overall combination of elements" used in the Claimed Trade Dress is fanciful and therefore distinctive.

When taking the elements of the Claimed Trade Dress in isolation, Defendant is correct that each element already had been used by Plaintiff's competitors, including Defendant, prior to 2007. For example, nearly every competitor's bins or packaging displayed images of pistachios. (Kennan Decl. ¶¶ 6-7, Exs. A, B, C, E). Moreover, given the natural color of pistachios, it is unsurprising that competitors have used a bright green color on their bins or packaging. (Id., Ex. A at 1, 7, 8; Ex. B at 2; Ex. C at 2, 3). Nor is the thin, sans serif font a feature that is unique to Plaintiff's trade dress. (Id., Ex. C).

---

[4] See also Mattel, Inc. v. MGA Entm't, Inc., 782 F. Supp. 2d 911, 1003–04 (C.D. Cal. 2011) (describing Seabrook test as predominant test for inherent distinctiveness); 1 McCarthy on Trademarks and Unfair Competition § 8:13 (4th ed. 2010) (describing Seabrook test as the preferred test); Wal–Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210 (2000) (noting that the Abercrombie spectrum of distinctiveness is properly applied to *word* marks).

|  | : |  |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

Additionally, the vertical positioning of the word "pistachios" is not novel; Defendant's bin from 2005 also vertically printed the word "pistachios," except it read from top to bottom. (Id., Ex. A at 7). Thus, none of the elements, taken individually, is inherently distinctive.

However, courts look to the trade dress as a whole in assessing inherent distinctiveness. Clicks Billiards, 251 F.3d at 1259 ("Courts have repeatedly cautioned that, in trademark-and especially trade dress-cases, the mark must be examined as a whole, not by its individual constituent parts."). "Although some of the individual parts or elements of a trade dress may lack distinctiveness on their own, the innovative and arbitrary combination of all of the elements together render the dress as a whole inherently distinctive." Shuffle Master Inc. v. Awada, No. 2:05-CV-01112-RCJ-(RJJ), 2006 WL 2547091, at *2 (D. Nev. Aug. 3, 2006). "The key inquiry is whether the combination of all the elements conveys an overall impression of distinctiveness." Miracle Blade, LLC v. Ebrands Commerce Group, LLC, 207 F. Supp. 2d 1136, 1153 (D. Nev. 2002).[5]

Comparing Plaintiff's Claimed Trade Dress against the extant trade dress in the industry in 2007, the Court concludes there is, at a minimum, a triable issue whether the Claimed Trade Dress is inherently distinctive. In the Court's view, the stark contrast between two colors – black and bright green, the use of capitalized, thin, sans serif print, and the vertical printing of "pistachios," together create an overall impression of modern simplicity. By contrast, none of the competitor's pistachio bins combined these same elements to create a comparable impression. For example, the other brands predominantly used other color combinations such as green and blue, green and yellow, or red and green. (Keenan Decl. ¶ 6, Ex. A at 1, 3, 7, 8, 9). Further, none of the competing bins used a similarly thin font in the green and black color scheme. Based on the foregoing, the Court concludes that the Claimed Trade Dress is more than a "mere refinement" of the existing industry trade dress for bins. There is a genuine dispute of material fact whether the Claimed Trade Dress is so unique that a consumer "will rely on it to differentiate the source of the product." Seirus, 849 F. Supp. 2d at 984.

### iii.     Secondary Meaning

---

[5] Other circuits are in accord. E.g., Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1120 (5th Cir. 1991), aff'd, 505 U.S. 763 (1992) ("The existence of descriptive elements does not eliminate the possibility of inherent distinctiveness in the trade dress as a whole."); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 39 (1st Cir. 1998); Paddington Corp v. Attiki Importers & Distribs., Inc., 996 F.2d 577, 584 (2d Cir. 1993) ("While each of these elements individually would not be inherently distinctive, it is the combination of elements and the total impression that the dress gives to the observer that should be the focus of a court's analysis of distinctiveness.").

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

There is also a triable issue whether Plaintiff's Claimed Trade Dress has acquired a secondary meaning. A product's trade dress "acquires a secondary meaning when the purchasing public associates the mark or dress with a single producer rather than with the product itself." Int'l Jensen, 4 F.3d at 823. Secondary meaning is the "mental association by a substantial segment of consumers and potential customers between the alleged trade dress and a single source of the product." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc) (internal quotations omitted). Unlike inherent distinctiveness, "secondary meaning is a learned association" between the producer and the packaging; it is thus "an 'acquired distinctiveness.' " Int'l Jensen, 4 F.3d at 823 (quoting Two Pesos, 505 U.S. at 769).

Secondary meaning may be established through direct or circumstantial evidence. See Cont'l Lab. Prods., Inc. v. Medax Intern., Inc., 114 F. Supp. 2d 992, 999-1000 (S.D. Cal. 2000). "Direct evidence, such as consumer surveys and direct consumer testimony, often provides the strongest evidence of secondary meaning." Id. at 1000. Alternatively, a plaintiff may establish secondary meaning through circumstantial evidence, including: (1) exclusivity, manner, and length of use; (2) amount and manner of advertising; (3) amount of sales and the number of customers; and (4) plaintiff's established place in the market. See Filipino Yellow Pages v. Asian Journal Publ'ns, 198 F.3d 1143, 1151 (9th Cir. 1999); Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc., 870 F.2d 512, 517 (9th Cir. 1989).

Additionally, evidence of deliberate copying "strongly supports" an inference of secondary meaning. Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 615 (9th Cir. 1989). However, such evidence does not always support an inference of secondary meaning because "[c]ompetitors may intentionally copy product features for a variety of reasons. Competitors may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits." Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 844–45 (9th Cir. 1987).

"Whether or not a trademark has acquired secondary meaning is a question of fact." Marker Int'l v. De Bruler, 844 F.2d 763, 764 (10th Cir. 1988). The plaintiff bears the burden of showing its trade dress obtained secondary meaning before the defendant commenced its allegedly infringing activities. Levi Strauss, 778 F.2d at 1358. As mentioned above, Plaintiff has created a triable issue of secondary meaning.

Plaintiff has presented evidence of extensive sales of its pistachios. Jasmine Hodari, the Senior Director of Brand Marketing for Plaintiff's Wonderful pistachio brand, attested that the Wonderful Pistachios brand is advertised and sold in 40 countries. (Hodari Decl. ¶ 4). She further stated the

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

Claimed Trade Dress has been in continuous use in connection with the Wonderful Pistachios brand since 2007, and that during that time, Plaintiff has sold over 180 million pounds of pistachios in the United States alone. (Id. ¶¶ 4-5).

Plaintiff's pistachios also have been widely publicized through television commercials. Hodari testified that Plaintiff has spent more than $45 million on television commercials advertising its pistachios in the last four years alone.[6] In the fall of 2009, and each year since, Plaintiff executed a television ad campaign on several major television networks[7] to advertise its pistachios through commercials that aired during prime time slots,[8] and which featured celebrities.[9] To date, Plaintiff has produced a total of 28 commercials advertising its pistachios. Significantly, all of these commercials contain elements to educate viewers about the Claimed Trade Dress. At the close of each commercial, Plaintiff's pistachio package emerges from a pistachio shell. This image is identical to that found at the center of Plaintiff's bin pictured above. In pertinent part, the image includes the use of bright green color in contrast to black color, the vertically oriented word "pistachios," in conjunction with images of

---

[6] Plaintiff spent almost $15 million advertising its pistachios in 2010, and more than $20 million in 2011. Plaintiff also spent more than $5 million on television commercials advertising its pistachios in the first quarter of 2012. (Hodari Decl. ¶ 6).

[7] These include NBC, CBS, ABC, FOX, A&E, Biography, Comedy Central, Discovery, Discovery Science, E!, Food Network, FX, HGTV, IFC, National Geographic, SYFY, TBS, TLC, TNT and ESPN. (Hodari Decl. ¶ 9).

[8] Plaintiff's commercials for its pistachios have aired during shows such as Survivor, X Factor, Jay Leno, Amazing race, Saturday Night live, David Letterman, Jimmy Kimmel, MLB World Series, Craig Ferguson, Dancing with the Stars, 30 Rock, Parks and Recreation, NCIS, Grey's Anatomy, Good Morning America, The Today Show, NFL, CSI, Modern Family, The Office, and Criminal Minds. (Hodari Decl. ¶ 13).

[9] In 2009, Plaintiff's pistachio commercials featured Vincent Pastore from The Sopranos, Levi Johnston, Lauren Caitlin Upjohn (a.k.a. Miss Teen South Carolina), Jason Acuna (a.k.a. Wee-Man), and Dara Torres (2008 Beijing Olympics silver medalist). (Hodari Decl. ¶ 9). In 2010, they included former Illinois governor Rod Blagojevich, "Snooki" from the reality show Jersey Shore, football star Chad Ocho Cinco, and comic Lewis Black. (Hodari Decl. ¶ 10). In 2011, the commercials showcased then-Laker Lamar Odom and his wife Khloe Kardashian, Kermit the Frog, and the "Facebook twins" Cameron and Tyler Winklevoss. (Hodari Decl. ¶ 11).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

pistachios. (Vasseghi Decl. ¶ 7, Ex. E).[10] Finally, it is worth noting that several of these commercials have been noted for their controversial nature in publications such as the Wall Street Journal, the Chicago Tribune, USA Today, Forbes magazine, and Vanity Fair. (Hodari Decl. ¶ 17, Ex. B).

In addition to television advertising, Plaintiff has utilized other methods of publicizing its pistachios. Plaintiff has placed print advertisements and coupons in several major newspapers, including the New York Post and the Los Angeles Times. (Hodari Decl. ¶ 18, Exs. C, D). These ads and coupons similarly educate its viewer about elements of the Claimed Trade Dress by depicting the same image described above of the pistachio package emerging from a shell. Additionally, Plaintiff has sponsored several Major League Baseball teams,[11] a professional cycling team, as well as events such as the World Speed Stacking Association and a NASCAR race. (Hodari Decl. ¶¶ 19-21, Ex. E).

Finally, there is circumstantial evidence that Defendant intentionally copied the Claimed Trade Dress. Prior to 2007, none of Defendant's bins remotely resembled the allegedly infringing bin. The 2004 bin was dark green and red, featuring the phrase "Snack Zone" in military font. (Vasseghi Decl., Ex. B at 7). Although the 2005 bin did include the word "pistachios" printed vertically from top to bottom, the words were cast in a thick serif font, and the rest of the bin was dark green and yellow. (Id.) The bins from 2008 and 2009 were predominantly green and yellow, and featured the word "pistachios" printed in thick serif font, scrolling horizontally in a slight arc. (Id.). None of these captured the same overall visual look of Plaintiff's Claimed Trade Dress. In 2011, however, Defendant's bin assumed a monochrome bright green background with the word "pistachios" in thin, sans serif font, scrolling from the bottom up.

The clear similarity in the overall visual impression between Defendant's 2011 bin and Plaintiff's bin supports an inference of deliberate copying. See Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC, 741 F. Supp. 2d 1165, 1177 (C.D. Cal. 2010) (finding inference of copying where alleged infringer's bottle design changed from containing no elements of plaintiff's trade dress, to suddenly featuring several such elements, including a square bottle, references to Fiji, a bird of paradise, and tropical foliage). This inference is strengthened by the fact that apart from Defendant, the available evidence only reveals one other pistachio producer that uses in-store display bins. (Pl. Additional

---

[10] Michael Vasseghi is Plaintiff's counsel. Exhibit E to his declaration is a DVD containing the 28 commercials produced by Plaintiff.

[11] New York Yankees, Los Angeles Dodgers, Anaheim Angels, Texas rangers, Cincinnati Reds, and the Atlanta Braves. In unbiased fashion, Plaintiff also sells its pistachios at stadiums of teams such as the San Diego Padres, Boston Red Sox, Seattle Mariners, and New York Mets. (Hodari Decl. ¶ 21).

:

Initials of Preparer            PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

Material Facts ("AMF") 47). Thus, it cannot be said that Defendant had no choice but to mimic Plaintiff's trade dress because other alternatives were unavailable. Given that Defendant had many options to choose from, the fact that it selected a trade dress so similar to Plaintiff's lends weight to the inference that it deliberately copied the Claimed Trade Dress.

In sum, Plaintiff has presented sufficient evidence to create a triable issue whether its Claimed Trade Dress has acquired a secondary meaning. Alternatively, Plaintiff has also created a triable issue whether its Claimed Trade Dress is inherently distinctive. At all rates, the distinctiveness factor does not entitle Defendant to entry of summary judgment.

### 4. Likelihood of Confusion

Likelihood of confusion "exists when customers viewing the mark would probably assume that the product or service it represents is *associated* with the source of a different product or service identified by a similar mark." Fuddruckers, 826 F.2d at 841 (internal quotation marks omitted) (emphasis added). Associative confusion "may arise not only where a consumer purchases a product thinking it is another, but also where there may be a mistake as to the sponsorship, quality or association of a product." First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1384 (9th Cir. 1987).[12] In all cases, "[t]he test is whether there is a likelihood of confusion resulting from the total effect of the defendant's product and package on the eye and mind of an ordinary purchaser."

The Ninth Circuit has identified eight factors that should be considered in assessing likelihood of confusion: (1) the similarity of the marks; (2) the strength of the marks; (3) evidence of actual confusion; (4) the proximity or relatedness of the goods; (5) the degree to which the marketing channels used for the goods converge; (6) the type of goods and the degree of care customers are likely to exercised in buying them; (7) the defendant's intent in selecting the mark; and (8) the likelihood the parties will expand their product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir.

---

[12] See also Lindy Pen Co., Inc. v. Bic Pen Corp., 725 F.2d 1240, 1246 (9th Cir. 1984) ("[T]he test for likelihood of confusion in this circuit is broader, embracing confusion as to the association between the goods or sponsorship of the allegedly infringing goods."); Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991) ("Likelihood of confusion will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks."); Charles Schwab & Co., Inc. v. Hibernia Bank, 665 F. Supp. 800, 804 (N.D. Cal. 1987) ("[T]hus, when speaking of a 'likelihood of confusion,' this denotes any type of confusion, including: confusion of source; confusion of affiliation; confusion of connection; or confusion of sponsorship.").

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

1979), abrogated in part on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003). The test is flexible in that the relevance of each factor depends on the case. Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1999).

      **i.      Similarity of Trade Dress**

      First, "the greater the similarity between the two [trade dresses] at issue, the greater the likelihood of confusion." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000). In assessing similarity, courts must consider the trade dresses in their entirety; judge similarity in terms of appearance, sound, and meaning; and weigh similarities more heavily than differences. Id. Defendant and Plaintiff's bins are similar in several respects. First, both bins utilize a bright green as a dominant background color. Second, both bins feature the word "pistachios" printed in thin, all-capitalized, sans serif font, and scrolling from bottom to top. Third, both bins contain images of outsize pistachios. Comparing the respective trade dresses as a whole, the overall similarity between the two bins is striking.

      Further, "[w]hen judging similarity, trademarks should be considered as they are encountered in the marketplace, taking into account the normal circumstances surrounding purchase of the type of goods they represent." Aurora World, Inc. v. Ty Inc., 719 F. Supp. 2d 1115, 1156 (C.D. Cal. 2009). Here, the evidence provided by Mark Zapf, one of Plaintiff's employees, is illuminating. Zapf, Director of Sales for Wal-Mart and Sam's Club for Plaintiff, provided photographs of Defendant's bins in various Wal-Mart stores. In some of these photographs, pasted below, Defendant's bins are positioned immediately adjacent to Plaintiff's bins. (Zapf Decl., Ex. A at 2). In these situations, the perceived similarity between the parties' bins is magnified.



                                                                        :

Initials of Preparer                PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

At the same time, Defendant's bin is distinct in that it includes the Keenan Farms California® logo at the top of the bin; a large red heart shape, (Defendant's "Heart Healthy" logo) at the center; Defendant's pistachios are closed whereas Plaintiff's pistachio is cracked open; and Defendant's bin includes a dark green trim instead of using black.  The impact of these differences, however, is substantially reduced in light of Plaintiff's evidence that the top of Defendant's bin is often cut off by grocery stores, so that the Keenan Farm's logo, as well as the complementary dark green, is entirely absent.  (Pl. Additional Material Facts ("AMF") 7); (Zapf Decl. ¶¶ 2-3, Ex. A).  Moreover, there is no evidence that the mere presence of a red heart shape will disabuse an ordinary consumer of the notion that Defendant's bin is affiliated with Plaintiff.  Drawing its inferences in Plaintiff's favor, the Court finds these purported differences to be of limited weight.  On the whole, this factor weighs decisively in favor of a likelihood of confusion.

### ii. Strength of Trade Dress

"The strength of a given mark rests on its distinctiveness." Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1448 (9th Cir.1988), abrogated on other grounds in Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir.1985) (en banc).  The Court already discussed above the considerable evidence weighing in favor of a finding that Plaintiff's Claimed Trade Dress is inherently distinctive or has acquired a secondary meaning, or both.  This factor therefore favors a likelihood of confusion.

//

### iii. Evidence of Actual Confusion

Plaintiff concedes it lacks evidence of actual confusion.  While such evidence can be persuasive proof that future confusion is likely, it is not necessary to prevail on an infringement claim.  See Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991) ("[A]ctual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act."); Levi Strauss, 778 F.2d at 1360 ("The absence of evidence of actual confusion need not give rise to an inference of no likelihood of confusion").  The import of the absence of such evidence in

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

this case is also mitigated by the fact that Defendant only introduced its allegedly infringing bin in 2011. As a result, this is not a case where Plaintiff has had years to collect such evidence but failed to do so.

### iv.   Proximity of Relatedness of Goods

Goods are proximate or related if they "are similar in use and function," and "would be reasonably thought by the buying public to come from the same source if sold under the same mark." Sleekcraft, 599 F.2d at 348 n.10, 350 (quotation marks omitted). Both parties sell pistachios. It is undisputed that this factor contributes to a likelihood of confusion.

### v.   Marketing Channels

The parties do not dispute that they sell pistachios in the same trade channels. As the Ninth Circuit has recognized, "[c]onvergent marketing channels increase the likelihood of confusion." Nutri/System, Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 606 (9th Cir. 1987).

### vi.   Degree of Care Exercised by Consumers

"[W]hat is expected of this reasonably prudent consumer depends on the circumstances." Brookfield Commc'ns, 174 F.3d at 1060. A reasonable consumer is expected to "be more discerning—and less easily confused—when he is purchasing expensive items." Id. By contrast, "when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." Id.

Plaintiff contends that pistachios are a "fast moving consumer good" available to a large portion of the population, purchased frequently, with a wide distribution and relatively low cost. Defendant contends that, according to Plaintiff, pistachio consumers are generally "college educated" and that pistachios are an "expensive nut." (Def. Mot. at 21 n.13). The Court finds Defendant's generalizations to be unhelpful, even if they are accurate. College graduates may be just as prone to exercise less care when buying something as inexpensive as a bag of nuts. Moreover, even if pistachios are expensive as far as nuts go, that does not change the fact that nuts are a relatively low cost commodity. Finally, it is worth repeating that besides the parties, it appears that only one other company uses in-store display bins. As a consequence, it is reasonable to infer that consumers are not accustomed to discriminating between a host of pistachio bins in a store, and thus less likely to exercise care once they spot a bin which they associate with a given producer. In light of the foregoing, the Court concludes that customers likely exercise less care when buying pistachios from bins, and therefore will be more vulnerable to confusion.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

### vii.   Defendant's Intent

"[A]n intent to confuse consumers is not required for a finding of trademark infringement." GoTo.com, Inc., 202 F.3d at 1208 (internal quotation marks omitted). Nonetheless, as discussed above, there is circumstantial evidence that Defendant intentionally copied Plaintiff's Claimed Trade Dress. Moreover, the inference of deliberate copying is strengthened when one compares Defendant's 2011 bin with the packaging of its pistachios in the bin. As described more fully below, Defendant's pistachio packaging has been and continues to be predominantly yellow with red accents, to display prominently the Keenan Farms logo, and to include the word "pistachios" in thick serif font, printed horizontally across the bag. (Def. St. of Uncontroverted Fact 9); (Keenan Decl. ¶ 6, Ex. A at 10). Previously, Defendant's bins from 2008 and 2009 shared these features, prominently displaying the Keenan Farm logo, printing the word "pistachios" in thick serif font horizontally, and incorporating plenty of yellow. (Vasseghi Decl., Ex. B at 7). By contrast, the 2011 bin uses a monochrome bright green background, prints the word "pistachios" in thin sans serif font, scrolling from the bottom up, and in some cases the Keenan Farm logo is cut off entirely. It is difficult to imagine why Defendant would suddenly change its bins to look *less* like its own packaging, and *more* like the bin and packaging of its competitor. The reasonable inference is that Defendant was intentionally copying Plaintiff's trade dress to take advantage of its reputation among consumers. Therefore, this factor weighs in favor of a likelihood of confusion.

### viii.   Expansion of Product Lines

"A ' "strong possibility" that either party may expand [its] business to compete with the other will weigh in favor of finding that the present use is infringing.'" Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n, 311 F.Supp.2d 1023, 1044 (D.Or.2004) (quoting Sleekcraft, 599 F.2d at 354). Neither party contends that this factor is relevant here.

### ix.   Balancing of Factors

Notwithstanding the similarity between the parties' *bins*, the Court is mindful that the core inquiry is the likelihood that a customer will believe that the *pistachios* inside Defendant's bins are associated with Plaintiff. See Fuddruckers, 826 F.2d at 841. In light of this principle, it is relevant in this case that unlike the parties' bins, the actual packaging of Defendant's pistachios is readily distinguishable from Plaintiff's packaging.

More specifically, Defendant argues that the strong overall dissimilarity between the parties' respective packages precludes any triable issue as to the likelihood of confusion. (See Def. Mot. at

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

21:6-14). Defendant's contention has some merit. For example, it is undisputed that Defendant's pistachio packaging is: (1) a rectangular bag; (2) predominantly yellow with red stripe across the seal at the top; (3) prominently displays the "Keenan Farm California" logo at the center, beneath which is the word "pistachios" printed horizontally in thick, white font against a dark green background. (Def. St. of Uncontroverted Fact 9); (Keenan Decl. ¶ 6, Ex. A at 10). By contrast, Plaintiff's pistachio packaging is: (1) an oblong rectangular bag; (2) predominantly black with pockets of transparent plastic to view the pistachios inside the bag; (3) prominently displays the mark "Wonderful" in white font across the top, beneath which is the word "pistachios" printed vertically in thin, bright green font. (SUF 26); (Hamilton Decl., Ex. F at Ex. 4).

The Ninth Circuit has recognized that "[u]se of differing names or distinctive logos in connection with similar marks can reduce the likelihood of confusion." Fuddruckers, 826 F.2d at 846 n.13. Thus, in Lindy Pen Co., Inc. v. Bic Pen Corp., 725 F.2d 1240 (9th Cir. 1984), the court upheld the district court's finding that the parties' packages were "readily distinguishable" in the marketplace in light of the "dominance of the company marks and logos . . . on all packaging." Id. at 1245 & n.4. Here, this principle applies with greater force, since the packages are distinguished not only by the presence of each party's name or logo, but also by unique package designs. In sum, the fact that the parties' packages look nothing alike, and prominently feature each party's distinctive logo or name, militates against the conclusion that a reasonable consumer "would probably assume" that the pistachios in Defendant's bins are associated with Plaintiff. Fuddruckers, 826 F.2d at 841.

Although the dissimilar packaging reduces the possibility of confusion, it does not foreclose a triable issue as to the likelihood of confusion. In Fuddruckers, the Ninth Circuit reviewed whether there had been sufficient evidence at trial to place the trade dress infringement claim before a jury. On appeal, the defendant-appellee argued that it should have obtained a directed verdict because the prominent display of its name throughout its trade dress precluded a finding of likelihood of confusion. 826 F.2d at 846 n.13. In rejecting that argument, the court observed that "[u]se of differing names or distinctive logos in connection with similar marks can reduce the likelihood of confusion but doesn't always do so. The issue is properly part of the factual determination left to the jury." Id. (internal citation omitted).

The Ninth Circuit's admonition is well-taken in this case. At the summary judgment stage, the Court must draw all reasonable inferences in the nonmoving party's favor. Mattel, 782 F. Supp. 2d at 942. Here, although one inference is that a consumer would not be confused about which party's pistachios she is buying in spite of the similar bins, other reasonable inferences exist. For instance, a reasonable consumer might also conclude that Plaintiff is endorsing Defendant's pistachios, or perhaps that Plaintiff actually owns Defendant's pistachios and is marketing them as an alternative product line.

|  | : |  |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

This inference is supported by the evidence, discussed earlier, that Plaintiff's Claimed Trade Dress has acquired a secondary meaning. Because there is evidence that consumers will associate the Claimed Trade Dress with Plaintiff, it is reasonable to infer that a consumer who sees a bin that strongly resembles Plaintiff's bin, will associate the pistachios inside the bin with Plaintiff.

     Additionally, given that consumers exercise less care when buying relatively inexpensive products such as pistachios, it is equally reasonable to expect that an ordinary consumer, after spotting one of Defendant's bins, might take a package from that bin under the mistaken impression that the pistachios are Plaintiff's product, not realizing his error until after the purchase. As discussed above, the likelihood of such an oversight is greater still in light of how few competitors use bins to display their pistachios. A reasonable consumer who is unaccustomed to discriminating among several bins is more likely to rely on heuristics at the point of sale. It is precisely in these circumstances that a consumer will draw on associations derived from the secondary meaning that Plaintiff arguably has built around its Claimed Trade Dress. Given this combination of factors, a rational juror could find that an ordinary consumer probably would be misled when buying a bag of pistachios from Defendant's bins.

     Finally, the two scenarios described above are not mutually exclusive. In other words, some consumers may be confused in the first manner, while others may be misled in the second. Or the same consumer could be confused in either manner on any given occasion. In view of these overlapping potential outcomes, the Court is further moved by the evidence that Defendant intentionally copied Plaintiff's trade dress. The fact that Defendant's trade dress transformed sharply in 2011, coupled with evidence that Defendant's bins are sometimes placed flush against Plaintiff's bins in the store, supports a reasonable inference that Defendant intended for consumers to be misled in the ways described above. Given the foregoing evidence, a jury could conclude that an ordinary consumer probably would be confused by Defendant's trade dress.

*   *   *

     In sum, the Court concludes that there is a triable issue whether a reasonably prudent consumer would be misled to think that the pistachios in Defendant's bins are associated with, endorsed by, or sold by Plaintiff. Accordingly, Defendant's Motion for Summary Judgment is DENIED with respect to the trade dress infringement claim.

     **B.**    **Dilution**

     Plaintiff also claims that Defendant's trade dress diluted the Claimed Trade Dress in violation of 15 U.S.C. § 1125. The statute "protects the holder of a trademark from dilution, which is different from,

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

and broader than, infringement in that neither confusion nor competition is required and the protection is nationwide in scope." Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1011 (9th Cir. 2004). "Dilution refers to the whittling away of the value of a trademark when it's used to identify different products." Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 903 (9th Cir. 2002) (citation and quotation marks omitted). While many dilution claims refer to trade names, the current statute explicitly applies dilution protection to trade dress. 15 U.S.C. § 1125(c)(4). To establish a claim of trade dress dilution, a plaintiff must show that (1) the trade dress is "famous and distinctive," (2) the defendant is "making use of the [trade dress] in commerce," (3) the defendant's "use began after the [trade dress] became famous," and (4) the defendant's use of the trade dress is "likely to cause dilution by blurring" or by "tarnishment." See Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2008).

Defendant first argues that there is no evidence that Plaintiff's Claimed Trade Dress is "famous." The Federal Trademark Dilution Act identifies four factors to consider when evaluating the famousness of a mark: (1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; (4) whether the mark was registered under the Act. 15 U.S.C. § 1125(c)(2)(A); Jada Toys, 518 F.3d at 635.

Although the Claimed Trade Dress is not registered under the Act, the remaining factors create at least a triable issue as to fame. As discussed above, Plaintiff spent millions of dollars on commercials educating viewers about its Claimed Trade Dress, and since 2007 has sold over 180 million pounds of pistachios in the United States under the Claimed Trade Dress. Indeed, Plaintiff's pistachios are sold in 40 different countries. Moreover, no other third parties use the Claimed Trade Dress. With respect to actual recognition, Ms. Hodari testified that the Wonderful Pistachios brand has a Facebook page with almost 300,000 "likes." While the Facebook recognition of the brand does not conclusively demonstrate actual recognition of the associated trade dress, it lends credence to the other evidence that the trade dress has become famous. Accordingly, the Court finds there remains a triable issue whether the Claimed Trade Dress is famous.

Defendant next argues that there is no evidence that its bins blur or tarnish Plaintiff's Claimed Trade Dress. Blurring occurs when, as a result of the offending trade dress, the Claimed Trade Dress no longer brings to the consumer's mind the senior user alone, but also the junior user. Mattel, inc. v. MCA Records, Inc., 296 F.3d 894, 904 (9th Cir. 2002). Meanwhile, "[t]arnishment occurs when a defendant's use of a mark similar to a plaintiff's presents a danger that consumers will form unfavorable associations with the mark." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 881 (9th Cir. 1999). Here, Plaintiff devotes a single paragraph to respond to Defendant's argument, and states only that

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-01463-SVW-E | Date | November 28, 2012 |
|---|---|---|---|
| Title | Paramount Farms International LLC et al v. Keenan Farms Inc et al. | | |

"PFI's claim is for dilution by blurring." (Pl. Opp. at 25). However, Plaintiff fails to point to any evidence of blurring. Plaintiff also fails to explain how, as a result of Defendant's bins, henceforth consumers who view the Claimed Trade Dress will think of Plaintiff or Defendant, or perhaps only of Defendant. Nor has Plaintiff presented any evidence that Defendant's bins will cause consumers to form negative associations with Plaintiff's Claimed Trade Dress. Because Plaintiff has failed to cite supportive facts of these elements of dilution, Defendant's Motion for Summary Judgment is GRANTED as to the dilution claim.

### C. Unfair Competition

Plaintiff's remaining claims for violation of Cal. Bus. & Prof. Code § 17200 et seq., and for common law unfair competition, are predicated on the federal infringement and dilution claims. Defendant only argues that the state-law claims rise and fall with the federal claims. Because the infringement claim survives summary judgment, while the dilution claim does not, Defendant's Motion for Summary Judgment is GRANTED with respect to the state law claims predicated on the dilution claim, and DENIED with respect to the state law claims based on the infringement claim.

### V. CONCLUSION

For the reasons above, Defendant's Motion for Summary Judgment is GRANTED with respect to the dilution claim and the derivative state-law claims. The Motion is DENIED with respect to the infringement claim and the associated state-law claims.

:

Initials of Preparer     PMC